## PEOPLE v. ORIENTAL BANK.

(Supreme Court, Appellate Division, First Department. March 17, 1908.)

1. BANKS AND BANKING—INSOLVENCY AND DISSOLUTION—APPOINTMENT OF RE-
CEIVERS—NOTICE OF APPLICATION.

Under Laws 1902, p. 113, c. 60. § 1, authorizing the court to appoint a receiver of a bank, and in its discretion to dispense with notice of application therefor, where the only proof before the court was that contained in the complaint by the Attorney General to dissolve a bank because insolvent, which showed that the funds of the bank were in the hands of the superintendent of banks, notice of the application for appointment of receivers ought to have been given, the law contemplating the giving of notice unless facts are presented showing a necessity for instant action to prevent impending wrong.

2. SAME.

Notice of an application for appointment of temporary receivers of a bank, as authorized by Laws 1902, p. 113, c. 60, § 1, having been improperly dispensed with, it was proper for the judge who granted the order of appointment, to thereafter grant an order, on application by the bank, to show cause why the order appointing receivers should not be set aside, and thus give the bank an opportunity to be heard to set aside the order improvidently granted without notice, and the effect of the order to show cause was not to review the former order, but rather to grant a hearing on the propriety of appointing receivers at all, and to advance the hearing on the original order to show cause why the receivers should not be made permanent, embraced in the order for temporary receivers.

3. SAME.

Neither the opinion of the superintendent of banks, nor of the Attorney General, that it is unsafe or inexpedient to allow a bank to transact business, is a sufficient basis for a judgment dissolving the bank and distributing its assets through the medium of a receiver, or otherwise.

4. SAME.

To justify the appointment of a receiver of a bank, the facts on which such relief is granted must be proved by competent legal evidence, and this requirement is not met by a verified complaint alone, though the allegations are positively made, and especially where the allegations of the complaint are on information and belief, or such as can only come from information.

5. SAME—ACTS OF INSOLVENCY.

The closing of a bank and calling on the superintendent of banks to take charge of its assets may very properly be deemed acts of insolvency, but are not conclusive, and where it is shown that this course was unnecessary, that the bank was able to pay its debts, and have a large surplus, these acts resulting from fright or overcaution, in view of the financial situation existing, or from ignorance of solvency, lose their probative force.

6. SAME.

The closing of a bank and calling on the superintendent of banks to take charge of its assets, resulting from fright or overcaution in view of the financial situation existing, or from ignorance of the bank's actual solvency, were not a surrender of the bank's corporate franchise, since surrender of a corporate franchise cannot be inferred even from insolvency and suspension of business for a less period than that designated by the statute, unless the circumstances are such as to make it appear that the corporation has not power to continue or resume its business.

7. SAME—DISCHARGE OF RECEIVERS—EFFECT.

On the discharge of receivers of a bank, the management of its affairs reverts to the directors, who have full authority to enter into any lawful arrangement to meet its obligations, and hence approval in the order discharging the receivers, of an agreement between the bank and another, whereby the latter was to advance a sufficient amount to pay all depositors and creditors, was unnecessary, as was also the direction to the superintendent of banks to release the assets in his hands, and to that extent the order will be modified.

Appeal from Special Term, New York County.

Action by the people to dissolve the Oriental Bank, on the ground that it was insolvent and unsafe, and inexpedient for it to continue doing business, and that it was unable so to do. From an order vacating an order appointing temporary receivers, the people appeal. Affirmed.

Argued before PATTERSON, P. J., and McLAUGHLIN, LAUGHLIN, HOUGHTON, and SCOTT, JJ.

William S. Jackson, Atty. Gen. (Martin L. Stover, of counsel), for the People.

Philbin, Beekman & Menken (David McClure, of counsel), for respondent.

HOUGHTON, J. The defendant is a domestic moneyed corporation, organized for the purpose of conducting a banking business. On the 31st day of January, 1908, a resolution was passed by its board of directors, closing its doors and requesting the State Superintendent of Banks to take charge of its affairs. That official complied with the request, and on the 4th day of February following advised the Attorney General of the state that the defendant had suspended payment, and that he had taken possession of its assets at its request, and formally reported to him that it was unsafe and inexpedient at that time for the defendant to continue business. Examiners from the Banking Department were directed by the Superintendent to examine as to the assets and liabilities of the defendant, and they found and reported that, exclusive of liability on its capital stock of $750,000, the defendant had, on the day the Superintendent took possession, a surplus of $1,233,-636.34. Certified public accountants were also employed, and they found the surplus to be, after making such deductions as they considered proper, $1,498,432.17. Since these reports were made, it appears the liability of defendant upon clearing house certificates has been reduced by nearly $600,000.

These examinations having shown the solvency of defendant, negotiations were entered into by authority of defendant's board of directors with the Metropolitan Trust Company for the loan of a sufficient sum of money to pay all depositors and creditors of the defendant. These negotiations resulted in an agreement on the part of the trust company, the details of which we do not deem material, to advance sufficient money for that purpose. The Superintendent of Banks gave his approval to this arrangement, subject, however, to acquiescence on the part of the Attorney General. That official was apprised of what the condition of the bank had been found to be, and of the arrangement that had been made to pay its debts, and of the approval of the Super-

intendent of Banks, and was asked to signify his approval thereof. Instead of giving his approval or signifying his disapproval, or doing anything except to say that he would take the matter up with the Superintendent of Banks at his earliest opportunity, which he does not appear to have done, he instituted this action to dissolve the defendant on the ground that it was insolvent, and that it was unsafe and inexpedient for it to continue doing business, and that it was unable so to do. The complaint was verified on the 28th day of February by the Attorney General himself, and on that day, upon the complaint alone, without any supporting affidavit, he applied to the court ex parte for the appointment of temporary receivers. An order was made appointing the Carnegie Trust Company and Henry Schneider such receivers. The order recites that sufficient reason appeared for dispensing with notice of the application, and contained an order to show cause on the 24th day of March, 1908, why the receivers should not be made permanent, together with the ordinary restraining provision meanwhile. On the following day, on the application of the defendant, in which more than 90 per cent. of the depositors and more than 70 per cent. of the stockholders of the defendant joined, the same judge who granted the order appointing the receivers made an order requiring the Attorney General and the receivers to show cause why the order appointing them should not be set aside. On the return of this order to show cause, the order appointing the temporary receivers was vacated, and the plaintiff appeals.

The appointment of receivers of moneyed corporations is regulated by chapter 60, p. 113, of the Laws of 1902, which provides that the court may, in a case provided by law, appoint a receiver of such corporation, and may, in its discretion, dispense with notice of the application. The complaint, upon which alone the application was made, showed that the defendant's assets were in the hands of the Superintendent of Banks, voluntarily placed there by the defendant itself. The Attorney General should have given the defendant notice of his application for the appointment of the temporary receivers. Unless there be some emergency requiring immediate action, the law contemplates the giving of notice of an application for the appointment of receivers. The court to which application may be made is given discretion to dispense with notice, but that discretion must be based on some proven facts presented to it showing necessity for instant action to prevent some impending wrong. Conclusions are not enough; and, if such proven facts are not presented, notice should not be dispensed with, but should be required. In the present case, instead of there being any proof authorizing the dispensing with notice, the only proof before the court was that contained in the complaint itself, which showed that the funds of the defendant were in the hands of the Superintendent of Banks, the state official authorized by law to hold them.

The court having been led into improperly dispensing with notice of appointment of the temporary receivers, it was very proper for the judge who granted the original order to grant an order to show cause, and thus give the defendant an opportunity to be heard to set aside the order which he had improvidently granted without notice. The effect

of this order to show cause was not to review the former order, but rather to grant a hearing on the propriety of appointing receivers at all, and to advance the hearing on the original order to show cause appointed for March 24th to an earlier date. Treating the procedure in this manner, as it is proper we should, it is manifest that on the hearing the defendant was shown to be perfectly solvent, and that receivers ought not to have been appointed, and that the order vacating their appointment was proper.

The report of the bank examiners showed a surplus over debts of nearly $1,250,000, and that of the public accountants of nearly $1,500,-000. The liability of the defendant to its stockholders on its $750,000 of capital stock is of no concern to the people. The Attorney General is not the guardian of investors against their will. Paternal government in this state has not yet gone to the extent of regulating in what its citizens shall invest their money. It is primarily the creditors of an insolvent corporation with which the state is concerned. It is hardly probable that the assets of the defendant, cut down as they have been, will further shrink sufficiently to wipe out the large surplus shown, so that the creditors of the defendant will not obtain their money in full.

The complaint alleges that from reports made by the Superintendent of Banks to the Attorney General, he believes the defendant will be unable to pay its depositors and other creditors. The only report disclosed by the record is one which shows the large surplus referred to. The Attorney General has received no report of the Superintendent of Banks that the defendant is actually insolvent, so far as appears, but only that it was at the time of making it unsafe and inexpedient for the defendant to continue business. If the Attorney General has any report from the Superintendent of Banks as to defendant's insolvency, which is quite improbable, he should have presented it by affidavit or alleged its substance in the complaint.

It is true that the law provides that the Superintendent of Banks shall inform the Attorney General with respect to the financial condition of moneyed corporations. The report, however, even of the Superintendent of Banks is not conclusive as to insolvency, any more than the conclusion on that subject of the Attorney General himself. "The report of the Superintendent (of Banks) to the Attorney General in regard to the defendant's transactions may have been quite sufficient to justify the Attorney General in bringing the action; but the report in and of itself was not sufficient for a cause of action. Neither the opinion of the Superintendent nor of the Attorney General that it is unsafe or inexpedient to allow a bank * * * to transact business is a sufficient basis for a judgment dissolving a corporation and distributing its assets through the medium of a receiver or otherwise. * * * A mere statement that the Superintendent is of the opinion that it would be unsafe and inexpedient for the defendant to transact business any longer, and that the Attorney General concurs with him, does not constitute a cause of action." People v. Manhattan Real Estate & L. Co., 175 N. Y. 133, 137, 138, 67 N. E. 219, 220.

There is a further broad allegation in the complaint that the defendant is insolvent. The Attorney General does not allege that he himself examined as to the assets and liabilities of the defendant, so that he acquired personal knowledge of its financial condition. The whole tenor of his complaint is that his conclusion, which he alleges as a positive fact, is based on information furnished by others. The complaint, therefore, standing alone, stated no facts upon which a judgment of insolvency could be based.

Before a court is justified in appointing a receiver, the facts upon which such relief is granted must be proved by competent legal evidence. Platt v. Elias, 101 App. Div. 518, 523, 91 N. Y. Supp. 1079. This requirement is not met by a verified complaint alone, although the allegations are positively made (Kieley v. Barron & Cooke H. & P. Co., 87 App. Div. 317, 84 N. Y. Supp. 306); and especially is this true where the allegations of the complaint are upon information and belief, or such as can come only from information. Weber v. Wallerstein, 111 App. Div. 700, 97 N. Y. Supp. 852.

The closing of defendant's banking house and calling upon the Superintendent of Banks to take charge of its assets may very properly be deemed acts of insolvency, but they are not conclusive acts. When it was shown, as it was, that this course was unnecessary, that the defendant was able to pay its debts and have a large surplus besides, these acts resulting, as they must, from fright or overcaution in view of the financial situation existing, or from ignorance of the solvency now disclosed, lose their probative force. Nor were such acts a surrender of defendant's corporate franchise. A surrender of corporate franchises cannot be inferred even from insolvency and suspension of business for a less period than that designated by the statute to consummate it, unless the circumstances are such as to make it appear that the corporation has not power to continue or resume its business. United Glass Co. v. Vary, 79 Hun, 103, 29 N. Y. Supp. 636.

It is urged that Matter of Murray Hill Bank, 153 N. Y. 199, 47 N. E. 298, and People v. Mercantile Coöperative Bank, 53 App. Div. 295, 65 N. Y. Supp. 766, are authority for sustaining the appointment of the receivers. In our view, these decisions are not controlling. The point involved in the first of these cases was whether proceedings taken by the Attorney General took precedence over a proceeding for voluntary dissolution of a concededly insolvent banking institution, and it was held that the Attorney General's right was paramount. In the latter case, it was determined upon the facts that the acts of the corporation were such that it would not longer be permitted to do business.

Concerning the proposed contract with the trust company, it is urged that it is not a binding contract on the trust company obligating it to advance the money necessary to pay defendant's creditors, and that the terms are extravagant, and that the trust company cannot in any event lend the amount of money required, because a sum is called for in excess of the amount that it is permitted to loan. We must assume from the record that the proposition of the trust company is made in good faith, and that it will carry out its agreement.

There is nothing in the record to show that it has not the power to do what it has agreed to do; and it is more than probable that it can, in view of the quick assets which are immediately available for purchase or sale. If the creditors are paid, however, that is all that concerns the plaintiff at the present time. The trust company has made a plain business proposition to advance the necessary money to do this, upon what appears to be ample security.

So far, however, as concerns the approval in the order appealed from of the proposed agreement between the Oriental Bank and the Metropolitan Trust Company, it was unnecessary; as was also the direction to the Superintendent of Banks to release the assets in his hands. This latter result would naturally follow, if he shall be satisfied that the bank is solvent and will be able, under the proposed agreement if executed, to pay its creditors at once. As soon as the receivers are discharged, the management of the affairs of the bank reverts to the directors, who have full authority to enter into any lawful arrangement for the purpose of promptly meeting its obligations; and, therefore, the order in these regards should be modified.

The order appealed from will be modified in the manner hereinbefore indicated, and, as modified, affirmed.

PATTERSON, P. J., and McLAUGHLIN and SCOTT, JJ., concur.

LAUGHLIN, J. I concur in the discussion in the opinion of Mr. Justice HOUGHTON, with respect to the solvency of the bank and the impropriety of the appointment of the receivers, and I agree that the order appointing the receivers was properly vacated. It appearing that the receivers were improperly appointed, and that the order appointing them should be vacated, it seems to me that the jurisdiction of the court in the premises ends. It is not the province of the court to advise the directors of a bank with respect to their powers or duties. The stockholders, as well as the depositors, are interested in the question as to whether the disposition of the assets of the bank contemplated by the proposed agreement with the Metropolitan Trust Company, contained in the record, is legal or proper, and before any judicial decision or intimation is given upon those questions, in my opinion they should be heard. The only question properly before the court at Special Term was whether the appointment of the receivers was justified, and, on reaching the conclusion that it was not justified, the only authority the court had was to vacate the order appointing them. It was, in my opinion, wholly without jurisdiction to give directions to the Superintendent of Banking or to the directors with respect to the future management of the affairs or property of the bank. Whether, on the redelivery of the property of the bank to its directors, the business of banking may or should be resumed, and whether, if unable to resume business, money may lawfully or should be raised in the manner proposed, which, in effect, constitutes a discontinuance of the banking business and a liquidation of the affairs of the bank by contract, or otherwise, or whether, instead, the bank should go into voluntary liquidation in the manner provided by statu-

tory law, are questions which are not presented for decision by the record now before the court, and, therefore, I refrain, and think the court should refrain, from expressing any opinion thereon.